**6:05-CV-686-ORL-31JGG**

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN
AND FOR ORANGE COUNTY,
FLORIDA

BORDEN M. LARSON
    Plaintiff

CASE NO.  04 CA 3536

vs.

CORRECT CRAFT INC.
ROBERT TODD
WILLIAM SNOOK
    Defendants

RECEIVED

SEP 2 7 2004

A. D. D. M. G.



_____/

### FIRST AMENDED COMPLAINT
### FOR DAMAGES
### DEMAND FOR JURY TRIAL

The plaintiff, BORDEN M. LARSON ("LARSON"), by his undersigned attorney,

bring this action against defendants, CORRECT CRAFT, INC. (CORRECT

CRAFT) ROBERT TODD, (TODD) and WILLIAM SNOOK (SNOOK) and

alleges:

### JURISDICTIONAL ALLEGATIONS

1.    This is an action for damages that exceeds fifteen thousand ($15,000)

    dollars.

2.    This Court has jurisdiction pursuant to the provisions of applicable law and

    all statutory and legal prerequisites, notices and or conditions precedent to

the filing of these causes of action against the named defendants have been met and/or fulfilled by the plaintiff.

3.  The plaintiff, BORDEN M. LARSON (LARSON) is an individual, who at all times material to this cause of action, was a resident of Orange County, Florida.

4.  The defendant, CORRECT CRAFT, INC. (CORRECT CRAFT) (or in some other name or fictitious name) was at all times material to this cause of action a Florida corporation (or some other legal entity) organized and existing under the laws of the State of Florida.

5.  The defendant, ROBERT TODD (TODD) is an individual, who at all times material to this cause of action, was a resident of Orange County, Florida.

6.  The defendant, WILLIAM SNOOK (SNOOK) is an individual, who at all times material to this cause of action, was a resident of Orange County, Florida.

## COMMON ALLEGATIONS

7.  For almost 80 years, the defendant CORRECT CRAFT, was, and is, a privately held company owned by members of the Meloon family, that was, and is, a manufacturer and builder of pleasures boats under the brand names of "Ski Nautique," "Fish Nautique" "Sport Nautique" and "Air Nautique."

8.     At all times material to this cause of action, the defendant CORRECT

CRAFT acted through its employees, officers, directors, authorized or

apparent agents, acting within the scope of their employment, and/or

engagement.

9.     Those employees, officers, directors, authorized or apparent agents were as

follows:  Walter N. Meloon, President/CEO;  Walter Gary Meloon, Director

of Marketing;  William N. Snook, Engineering Manager; Bob Burns,

National Sales Manager; Angela Pilkington, Office Manager;  Lawrence J.

Meddock, VP Director of Marketing; Carl M. Napolitano, Ph.D. Registered

Patent Agent; and Herbert L. Allen, Patent Attorney.


## THE PLAINTIFF'S EMPLOYMENT WITH CORRECT CRAFT

10.    On February 26, 1986, defendant CORRECT CRAFT hired the plaintiff

LARSON as an hourly employee in the general capacity of a draftsman and

he began to document the parts in the stockroom with mechanical drawings.

11.    Over the years, LARSON'S employment continued in a general capacity and

his duties were to draw, devise and construct general methods to

manufacture the boats involving the hull, deck, stringers, dash, seating,

graphics, striping patterns and hardware arrangements.

12.   At no material times during the plaintiff's employment was the plaintiff LARSON specifically employed by defendant CORRECT CRAFT for the purpose of inventing, or inventing a new water ski towing method, or inventing a new storage system for water skis and wakeboards, or inventing a method to improve the aerial characteristics of a performer using a water sports implement.

13.   At no material times during the plaintiff's employment, did the defendant CORRECT CRAFT require, request, or ask LARSON to sign, agree or execute a contract, agreement, term of employment, intellectual property agreement, invention agreement, job description, or any other agreement or understanding, that required or demanded that things invented on the job belonged to, and became the property of, the defendant CORRECT CRAFT.

## BORDEN LARSON INVENTS WAKEBOARD TOWER

14.   In or about June of 1996, the plaintiff LARSON was working on a drawing for the defendant's "Sport Nautique" pleasure boat and was thinking of a method to increase storage space.  The defendant CORRECT CRAFT had not assigned the plaintiff the duty to design, invent or increase storage space on the boat.

4

15. While alone in his office, the plaintiff LARSON thought about placing a tall welded tubular structure up, and over, the helm area of the boat to which water skis could be attached or hung. The defendant had not assigned the plaintiff such a task.

16. The plaintiff LARSON sketched on a sheet of paper a tall welded metal tubular tower up, and over, the helm area of the boat, and attached the tower to the left and right sides of the boat.

17. For visual effect, the plaintiff LARSON sketched wakeboards mounted on the sides of the tower. The defendant CORRECT CRAFT had not assigned the plaintiff the task to sketch, design or invent a tall welded metal tubular tower, over the boat, to mount water skis or wakeboards.

18. The plaintiff LARSON then sketched a spot on the top of the tower to attach the tow rope for pulling water skiers. The defendant CORRECT CRAFT had not assigned the plaintiff the task to sketch, design or invent an attachment point for a tow rope.

19. The plaintiff LARSON then realized that by attaching the tow rope on top of the tower, the tall "pylon" commonly mounted in the center of the boat and used to attach the tow rope could be eliminated. The defendant CORRECT CRAFT had not assigned the plaintiff the task of eliminating the pylon.

20.     The plaintiff LARSON'S tower was an invention or discovery of a new and useful process, or of a new and useful machine or manufacture, or of a new and useful improvements thereof.

21.     The Patent Law in the United States, and in the State of Florida, provides that the title, right to manufacture, use, and sell an invention belongs to the inventor.

22.     The Patent Law in the United States, and in the State of Florida, also provides that an employer is not entitled to a patent covering an invention made by an employee, in the absence of an express agreement to that effect, but is only entitled to a "shop-right," which is a nonexclusive, nontransferable license thereunder.

## LARSON SHOWS INVENTION TO CORRECT CRAFT

23.     On August 30, 1996, two months after the plaintiff conceived the tower idea, the plaintiff LARSON presented his idea for the first time to the CORRECT CRAFT managers at the model change meeting for the Sport Nautique skiboat.

24.     At the August 30, 1996 meeting, CORRECT CRAFT President, Mr. Walter Meloon thought the tower idea has some promise and asked that a prototype

6

be built and tested.

25.   In response, the plaintiff LARSON found several local welding companies, and gave these numbers to CORRECT CRAFT management.  One company was called Todd's T-Topps and Towers and was owned by defendant TODD.

26.   On September 9, 1996 the plaintiff LARSON created two "concept/design" drawings which were sent to defendant TODD for him to use in the fabrication of the first experimental prototype tower. The plaintiff's drawings clearly indicate they were drawn by "B. LARSON" with the date of "9/9/96."

27.   By September 27, 1996, the prototype had been built, mounted on a boat and tested, and thereafter the plaintiff's supervisor, the defendant SNOOK, reported to Correct Craft's management team that the plaintiff's "Tow Tower" had notable advantages over conventional towing methods.

28.   On or about October 3, 1996, Gary Meloon, CORRECT CRAFT's Director of Marketing, began the patent process for the tow tower had asked that drawings be created for the patent attorneys.

29.   On October 7, 1996, Gary Meloon wrote the plaintiff LARSON a memorandum asking him to provide a drawing and description of the tow

tower for the patent application. The memo indicated that "we need to start this process as soon as possible." The plaintiff LARSON relied on written words, actions and conduct of Gary Meloon to mean that the tow tower concept belonged to CORRECT CRAFT.

30. The plaintiff LARSON believed that statement and conduct of Gary Meloon, meant that CORRECT CRAFT had the right to file for the patent. The statement and conduct from Gary Meloon was false, because the invention did not belong to CORRECT CRAFT, and at most, CORRECT CRAFT had "shop rights" in the invention.

31. Because the plaintiff believed Gary Meloon's statement, and thus believed that CORRECT CRAFT had the rights to patent the tower, the plaintiff LARSON provided Gary Meloon a memorandum on October 8, 1996 outlining the "Patent Process for Tower" listing the benefit of the tow tower.

32. On October 8, 1996, with the drawings created by the plaintiff, and the listing of the benefits of the tower, defendant SNOOK, started the process to patent to tower. The plaintiff knew that his boss, defendant SNOOK, was working on the patent process and plaintiff LARSON relied on his boss's conduct to mean that CORRECT CRAFT had the rights to patent the tower.

33. On October 22, 1996 the plaintiff LARSON was invited to attend a "focus

group" where suggestions were made that CORRECT CRAFT patent the tower. The plaintiff relied on words, actions and conduct of CORRECT CRAFT'S "focus group" to mean that CORRECT CRAFT had the rights to patent the tower.

34. By November 8, 1996, defendant SNOOK, the plaintiff's Supervisor, was well into the patent process and inquired of the patent attorney whether a patent search was justified. The plaintiff LARSON knew of defendant SNOOK'S involvement with the patent attorneys and relied on words, actions and conduct of defendant SNOOK and that of the patent attorneys, that CORRECT CRAFT had the right to pursue the patents.

35. By February 6, 1997, defendant SNOOK, had the patent paperwork on his desk and was directed by the CORRECT CRAFT'S President, Mr. Walter Meloon to emphasize that the tower was an improved and enhanced way to tow a water skier. The plaintiff LARSON was aware of this and relied on words, actions and conduct of defendant SNOOK, and that of the President Walter Meloon to mean that CORRECT CRAFT had the rights to patent the tower.

36. On or about May 24, 1997, CORRECT CRAFT demonstrated the tow tower in public at the 38th Masters Ski Tournament at Calloway Gardens, Georgia.

9

A report that came back that the tower was "simply awesome."

37.  In response to the "awesome" showing at the Masters Ski Tournament, many other ski boat companies began to build their own towers, and a rush began within CORRECT CRAFT to accelerated the patent process to secure for CORRECT CRAFT the rights that LARSON thought to belong to them. The plaintiff believed the words, actions and conduct of CORRECT CRAFT managers that the patent process must be accelerated to protect Correct Craft's property rights.

38.  On or around October 20, 1997, CORRECT CRAFT'S President Walter Meloon asked the plaintiff LARSON to clarify the origins of the "Flight Control Tower."   In response, the plaintiff wrote a detailed memorandum explaining how he thought up the tower without any direction from CORRECT CRAFT, and how he thought up the idea for the tower by himself.  The plaintiff believed the words, actions, conduct and omissions of Walter Meloon to mean that CORRECT CRAFT had the rights to his invention.

39.  Later on February 2, 1998 the plaintiff LARSON responded to Bob Burns, CORRECT CRAFT'S national sales manager,  by writing him a memo explaining again that the creation of the tower came from LARSON.

40. Later, at a management meeting where both the plaintiff LARSON, CORRECT CRAFT management, and patent attorney Herbert Allen were in attendance, the royalties that CORRECT CRAFT could charge other boat companies was discussed. The plaintiff believed the words, actions, conduct and omissions of CORRECT CRAFT management and the words of Hebert Allen that the future royalties belonged to CORRECT CRAFT even though the tower idea had originated with the him.

## CORRECT CRAFT'S PATENT APPLICATIONS

41. Based on the plaintiff's drawings, memorandums and ideas for the tower, the defendant CORRECT CRAFT filed applications for United States Letters Patent claiming ownership for utility and design patents on the plaintiff's inventions as follows:

   (a)  Name: Water Sport Towing Apparatus and Method; Serial Number: 09/036/826;  Filing Date 3/9/98;  Patent No. 5,979,350; Issued: 11/9/99

   (b)  Name: Water Sport Performance System and Method;  Serial Number: 09/037/172;  Filing Date 3/9/98;  Patent No. 6,044,788;  Issued: 4/4/00

(c)     Name: Water Sport Towing Apparatus; Serial Number: 09/399/683; Filing Date: 9/21/99; Patent No. 6,192,819; Issued: 2/27/01

(d)     Name: Water Sport Towing Apparatus and Method; Serial Number: 09/613/154; Filing Date: 6/30/00; Patent No. RE37,823; Issued: 9/3/02

(e)     Name: Water Sport Towing Device; Serial Number: 29/141/472; Filing Date: 5/7/01; Patent No. D462,932; Issued: 9/17/02

(f)     Name: Water Sport Towing Apparatus; Serial Number: 09/624,166; Filing Date: 7/24/00; Patent No. 6,374,762; Issued: 4/23/02

(g)     Name: Water Sport Towing Apparatus; Serial Number: 095387; Filing Date: 3/12/02; Patent No. 6,666,159; Issued:12/23/03

## CORRECT CRAFT HAD A DUTY TO BE TRUTHFUL

42.     The defendant CORRECT CRAFT, and/or their authorized or apparent agents, had skills, training, knowledge and/or experience not possessed by the plaintiff LARSON, and such skills, training, knowledge and/or experience enabled Defendant CORRECT CRAFT to evaluate more accurately than plaintiff LARSON the facts that were material to the ownership, rights of inventorship, assignment and payment for the

assignment, and thus the defendant CORRECT CRAFT had a duty to be truthful, and had a duty to disclose material facts to the plaintiff LARSON and had a duty to disclose the fact that an employee who invents while on the job nevertheless owns the invention.

43. Instead of telling the truth, the defendant CORRECT CRAFT, and/or their authorized or apparent agents acting within the scope of their employment, and/or engagement, through their words, actions, conduct, oral statements, written statements, representations, assurances and/or omissions, conveyed to the plaintiff LARSON that: (a) the tower invention belonged to CORRECT CRAFT from its inception; (b) that any future patents for the invention belonged to CORRECT CRAFT; (c) that any royalties from the future licensing of the patents belonged to CORRECT CRAFT; (d) that the patent assignments were a mere formality to complete the patenting process; (e) that LARSON had no personal property rights to the inventions; (f) that CORRECT CRAFT did not have to pay consideration for the patent assignments; (g) that because LARSON was an employee of CORRECT CRAFT the tower inventions belonged to CORRECT CRAFT; (h) that because LARSON created the inventions on the job, they belonged to CORRECT CRAFT; (i) that the plaintiff's job duty as an employee of

CORRECT CRAFT was to sign forms conveying the inventions to the defendant CORRECT CRAFT; (j) and that any compensation for the assignments was already paid in the salary plaintiff LARSON had received.

## LARSON RELIED ON CORRECT CRAFT'S WORDS

44.   The plaintiff LARSON believed the words, actions, conduct, oral statements, written statements, representations, assurances and/or omissions of CORRECT CRAFT, and/or their authorized or apparent agents acting within the scope of their employment, and believed that: (a) the tower invention belonged to the defendant CORRECT CRAFT from its inception; (b) that any future patents for the invention belonged to the defendant CORRECT CRAFT; (c) that any royalties from the future licensing of the patents belonged to the defendant CORRECT CRAFT; (d) that the patent assignments were a mere formality to complete the patenting process; (e) that he had no personal property rights to the inventions; (f) that CORRECT CRAFT did not have to pay consideration for the assignments; (g) that because LARSON was an employee of CORRECT CRAFT the tower invention belonged to CORRECT CRAFT; (h) that because LARSON created the invention on the job, it belonged to CORRECT CRAFT; (i) that the plaintiff's job duty as an employee of CORRECT CRAFT was to sign forms conveying the

inventions to the defendant CORRECT CRAFT;  (j) that if he did not sign the assignment as requested, his job at CORRECT CRAFT would be in severe jeopardy.

## **LARSON FOLLOWED CORRECT CRAFT DIRECTION**

45.    As directed by defendant CORRECT CRAFT, plaintiff LARSON assigned various unspecified interests to defendant CORRECT CRAFT as follows:

(a)    On March 9, 1998, plaintiff LARSON was induced by Mr. William Snook and Carl M. Napolitano to assign his rights to "Water Sport Towing System and Method" to defendant CORRECT CRAFT as a document necessary for the patent application.

(b)    On September 17, 1999,  plaintiff LARSON was induced by Mr. William Snook and Carl M. Napolitano to assign his rights to "Water Sport Towing Apparatus" to defendant CORRECT CRAFT as a document necessary for the patent application.   The assignment was neither necessary for the patent application, nor was the plaintiff paid anything for said assignment.

(c)    On April 25, 2000, plaintiff LARSON was induced by Mr. William Snook and Herbert Allen to assign his rights to U.S. Patent No. DES 409,972 to defendant CORRECT CRAFT as a document necessary for the patent

application. The assignment was neither necessary for the patent application, nor was the plaintiff paid anything for said assignment.

(e)    On June 23, 2000, plaintiff LARSON was induced by Mr. William Snook and Herbert Allen to assign his rights to "Water Sport Towing Apparatus and Method" as a document necessary for the patent application. The assignment was neither necessary for the patent application, nor was the plaintiff paid anything for said assignment.

(f)    On March 23, 2001 plaintiff LARSON was induced to assign his rights to "Water Sport Towing Assembly." The assignment was notarized by Geraldine Fowler on April 23, 2001, a month after it was signed. This assignment was neither necessary for the patent application, nor was the plaintiff paid anything for said assignment.

(g)    On May 1, 2001 plaintiff LARSON was induced to assign his rights to "Water Sport Towing Assembly." The assignment was neither necessary for the patent application, nor was the plaintiff paid anything for said assignment.

46.    Neither, the defendant CORRECT CRAFT nor any of its authorized or apparent agents acting within the scope of their employment and/or engagement, paid the plaintiff LARSON any compensation in exchange for the inventions and/or patent

assignments.

47.  At no time did the plaintiff LARSON intend the assignment conveyances to be a
     gift or a gratuitous conveyance to defendant CORRECT CRAFT.

48.  Shortly after the assignments were given, the defendant CORRECT CRAFT
     terminated the plaintiff LARSON's employment without reason.

## COUNT I
## FRAUD AGAINST CORRECT CRAFT

49.  The plaintiff re-alleges paragraphs 1 through 48 and incorporates them here as
     though set forth in full.

50.  This is an action for fraud, compensatory and special damages, together with
     interest and costs.

51.  The words, actions, conduct, oral statements, written statements, representations,
     assurances, and/or omissions by defendant CORRECT CRAFT, and/or their
     authorized or apparent agents, acting within the scope of their employment and/or
     engagement, to plaintiff LARSON were: (a) made prior to, or contemporaneously
     with, and in conjunction with, the assignment of patents; (b) were intentionally
     false, untrue statements of existing or past fact or they were reckless
     misrepresentations of existing or past fact; (c) they were made with recklessly
     indifference as to their truth or falsity; (d) they were designed to purposely

17

mislead the plaintiff LARSON; alternatively, (e) they were intentional or reckless

misrepresentation as to future acts which defendant CORRECT CRAFT knew to

be false and untrue at the time they were made.

52.  The defendant CORRECT CRAFT, and/or their authorized or apparent agents,

intended the plaintiff LARSON to rely on words, actions, conduct, oral

statements, written statements, representations, assurances, and/or omissions by

defendant CORRECT CRAFT, and/or their authorized or apparent agents.

53.  The defendant CORRECT CRAFT and/or their authorized or apparent agents,

employed a trick and/or artifice, by false and/or insincere behavior consisting of

words, actions, conduct, oral statements, written statements, representations,

assurances, and/or omissions that disguised the true facts of the situation, and that

mislead the plaintiff LARSON and which prevented him from investigating the

material facts of the transaction.

54.  The false representations and material omissions of fact by defendant CORRECT

CRAFT and/or their authorized or apparent agents, were without legal excuse or

justification, were premeditated and committed with actual knowledge and/or such

reckless indifference and/or were made with actual malice, as to the rights of the

plaintiff LARSON.

55.  Plaintiff LARSON justifiably and reasonably, relied to his detriment upon the

words, actions, conduct, oral statements, written statements, representations, assurances, and/or omissions made by CORRECT CRAFT and/or their authorized or apparent agents.

56. As a direct result of the false words, actions, conduct, oral statements, written statements, representations, assurances, and/or omissions, of the defendant CORRECT CRAFT, and/or their authorized or apparent agents, the plaintiff LARSON has incurred and sustained damages and mental anguish.

57. The fraud perpetuated upon plaintiff LARSON in this instance by CORRECT CRAFT and/or their authorized or apparent agents, was specific, certain and conclusive and the defendant CORRECT CRAFT is liable for its own actions and vicariously liable for the action of its agents.

WHEREFORE, LARSON demands judgment for damages against CORRECT CRAFT for compensatory and special damages, interest and costs and for any other relief this court deems just and equitable and further demands trial by jury on all issues so triable.

## COUNT II
## CONSTRUCTIVE FRAUD
## FOR FAILURE TO DISCLOSE AGAINST CORRECT CRAFT

58. The plaintiff re-alleges paragraphs 1 through 48 and incorporates them here as though set forth in full.

59. This is an action for constructive fraud, actual damages, together with interest,

costs and attorneys fees.

60.   The pleasure boat industry is very competitive, and a corporate policy of

confidentiality and secrecy was maintained at CORRECT CRAFT to keep their

new boat designs secret from their competitors.

61.   In accordance with this policy and environment of secrecy, the plaintiff kept all

boat design, invention and patent information confidential and never thought of

breaking this confidentiality and secrecy to seek outside advice regarding the

rights to his inventions.

62.   The defendant CORRECT CRAFT and plaintiff LARSON had a confidential

and/or fiduciary relationship where the plaintiff LARSON placed trust and

confidence in CORRECT CRAFT which resulted in CORRECT CRAFT having a

role of superiority.

63.   Additionally, the owners of defendant CORRECT CRAFT, held themselves, and

CORRECT CRAFT, out as a Christian company, who would live, work, function

and operate under Christian values of honesty and fairness, and the plaintiff, a

devout believer in the Christian faith accepted and continued his long employment

based on the representations of honesty and fairness.

64.   The defendant CORRECT CRAFT exerted influence over the decisions made by

Plaintiff LARSON which prevented the plaintiff LARSON from going outside of

the company to investigate the claims and facts.

65.  The defendant CORRECT CRAFT abused the confidential and/or fiduciary relationship by failing to disclose material facts about the patents, about ownership of inventions, and by providing false and misleading statements to the plaintiff.

66.  The defendant CORRECT CRAFT, had superior knowledge of the facts and used the confidential and fiduciary relationship to take advantage of the plaintiff LARSON and to suppress the truth, when they were under a duty to be truthful.

67.  CORRECT CRAFT made misrepresentations and omissions with the intention of preventing Plaintiff LARSON from independently investigating the facts and tricking him into executing the assignments as part of his duties as an faithful employee.

68.  The plaintiff LARSON, as a faithful employee, justifiable relied on the fact that a fair, truthful and honest relationship existed between himself and defendant CORRECT CRAFT.

69.  The trusting and confidential relationship was wrongfully used by CORRECT CRAFT to influence plaintiff LARSON to assign away his rights to the inventions.

70.  The plaintiff LARSON has suffered damage.

WHEREFORE, LARSON demands judgment for damages against CORRECT CRAFT for compensatory and special damages, interest and costs and for any other relief this court deems just and equitable and further demands trial by jury on all issues so triable.

## COUNT III
## RECESSION OF CONTRACT AGAINST CORRECT CRAFT

71.   The plaintiff realleges paragraphs 1 through 48, 51 through 57 and 60 through 70 and incorporates them here as though set forth in full.

72.   This is an action to rescind assignments of patent, together with interest and costs.

73.   The assignments given by the plaintiff were not freely made, but were obtained through fraud, mistake, duress and undue influence.

74.   The false representations made by the defendant CORRECT CRAFT, are shocking to the conscience, shocking to a sense of fair play, overreaching and unconscionable.

75.   The defendant CORRECT CRAFT induced the plaintiff LARSON to convey away the rights to his inventions, which he did not intend to do, did not foresee or could not understand.

76.   A confidential relationship of trust and confidence existed between the plaintiff and the defendant, and the defendant was required to act in good faith and with due regard for the interest of the plaintiff, and that confidential relationship was

wrongfully used by the defendant to influence and take advantage of the plaintiff.

77.   The defendant, without legal right, used pressure or implied threats that caused plaintiff to fear for his continued employment with the defendant.

78.   The plaintiff was mistaken in his understanding of the interpretation of a material contract term and made a mistake by believing that: (a) the tower invention belonged to the defendant CORRECT CRAFT from its inception; (b) that any future patents for the invention belonged to the defendant CORRECT CRAFT; (c) that any royalties from the future licensing of the patents belonged to the defendant CORRECT CRAFT; (d) that the patent assignments were a mere formality to complete the patenting process; (e) that he had no personal property rights to the inventions; (f) that CORRECT CRAFT did not have to pay consideration for the assignments because they had owned them from their inception; (g) that because LARSON was an employee of CORRECT CRAFT the tower invention belonged to CORRECT CRAFT; (h) that because LARSON created the inventions on the job, they belonged to CORRECT CRAFT; (i) that the plaintiff's job duty as an employee of CORRECT CRAFT was to sign forms conveying the inventions to the defendant CORRECT CRAFT; (j)  that CORRECT CRAFT owned the inventions because plaintiff invented them there; (k) that he was under an obligation to assign the invention to CORRECT CRAFT.

79.   Alternatively, both the plaintiff LARSON and the defendant CORRECT CRAFT
made the same above mentioned mistakes which were material to the contract, at
the time they executed the assignment contracts, and if it had been known or
correctly understood, the plaintiff would have stopped and not entered into the
assignment contracts.

80.   The plaintiff did not receive what was promised in exchange for the rights under
the patent assignments and the defendant failed to perform an important part of
what defendant promised.

81.   Plaintiff LARSON has notified CORRECT CRAFT of his intent to rescinded the
patent assignment contracts and has offered to repay to CORRECT CRAFT all
benefits he received under the assignment contracts.

82.   No adequate remedy at law exists and the parties can be restored to their positions
that existed prior to the formation of the patent assignment contracts.

WHEREFORE, LARSON demands judgment for damages against CORRECT CRAFT
rescinding the assignments of patent and restoring his rights to the tower inventions and
for any other relief this court deems just and equitable and further demands trial by jury
on all issues so triable.

**COUNT IV**
## BREACH OF ACTUAL OR IMPLIED-IN-FACT CONTRACT
## AGAINST CORRECT CRAFT

83.   The plaintiff re-alleges paragraphs 1 through 48, 51 through 57 and 60 through 70 and incorporates them here as though set forth in full.

84.   This is an action for breach of an implied in fact contract, or actual contract, for damages, together with interest and costs for the assignment of patents.  Said assignment are attached hereto as Exhibit 1.

85.   At the time defendant CORRECT CRAFT filed such applications for United States Letters Patent for the above-described articles, plaintiff LARSON assigned his interests to defendant in exchange for a promise made by defendant CORRECT CRAFT that plaintiff LARSON would receive from defendant CORRECT CRAFT good and valuable consideration for such assignments.

86.   The plaintiff LARSON did not receive any consideration.

87.   The defendant CORRECT CRAFT, did not perform its payment obligations under the actual, or implied in fact agreement to assign the patents.

88.   As a result of the Defendant's breaches, Plaintiff LARSON has been damaged.

WHEREFORE, LARSON demands judgment for damages against CORRECT CRAFT for compensatory and special damages, interest and costs and for any other relief this court deems just and equitable and further demands trial by jury on all issues so triable.

## COUNT V
## BREACH OF IMPLIED-IN-LAW (QUASI CONTRACT)
## TO AVOID UNJUST ENRICHMENT
## <u>AGAINST CORRECT CRAFT</u>

89.    The plaintiff re-alleges paragraphs 1 through 48, 51 through 57 and 60 through 70

and incorporates them here as though set forth in full.

90.    By inventing the tower, and assigning it to the defendant, CORRECT CRAFT, the

plaintiff LARSON has conferred a benefit on the defendant CORRECT CRAFT.

91.    The defendant CORRECT CRAFT, by taking the plaintiff's tower idea without

payment, obtaining patents therefore, and licensing the tower patents worldwide,

and collecting royalties thereby, has knowledge of the benefit conferred by the

plaintiff LARSON.

92.    The defendant CORRECT CRAFT has accepted and retained the royalties.

93.    After the defendant CORRECT CRAFT obtained the patents from the plaintiff

LARSON, they soon thereafter terminated his employment.

94.    The circumstances are such that it would be inequitable for the defendant

CORRECT CRAFT to retain the benefit of the invention and the patents without

paying fair value to the plaintiff LARSON.

WHEREFORE, LARSON demands judgment for damages against CORRECT CRAFT

for compensatory and special damages, interest and costs and for any other relief this

court deems just and equitable and further demands trial by jury on all issues so triable.

## COUNT VI
## CONVERSION AGAINST ROBERT TODD
## AND
## CONSTRUCTIVE TRUST TO AVOID UNJUST ENRICHMENT

95.   The plaintiff re-alleges paragraphs 1 through 26 and incorporates them here as though set forth in full.

96.   After receiving the drawings of the tower with the plaintiff LARSON'S name clearly marked, the defendant TODD welded up a prototype tower.

97.   Thereafter, the defendant TODD applied for a patent for the plaintiff LARSON'S tower, and applied for the patent in secret and without permission.

98.   The U.S. Patent Office issued a patent to defendant TODD with U.S. Patent No. DES 409,972.

99.   The defendant TODD then sold the rights to this patent for an amount of $355,000 and has thus profited thereby.

100.  By applying for a patent on the plaintiff's tower idea, and then selling the patent, the defendant TODD intentionally deprived the plaintiff LARSON of his personal property, that being the intellectual property rights to the tower.

101.  The deprivation was permanent or for an indefinite time.

102.  The Plaintiff LARSON had a present or immediate right to possess the intellectual property rights to the tower.

103.  The deprivation of his intellectual property rights was without LARSON'S

consent or authorization.

104.   The defendant TODD sold the plaintiff's intellectual property rights from the converted patent rights and has thus subsequently converted the sum of $355,000 which belonged to the plaintiff LARSON.

105.   The plaintiff LARSON has been damaged.

WHEREFORE, LARSON demands judgment for damages against ROBERT TODD for compensatory and special damages, interest and costs and for a Constructive Trust to Avoid Unjust Enrichment, any other relief this court deems just and equitable and further demands trial by jury on all issues so triable.

**COUNT VII**
**CONVERSION AGAINST WILLIAM SNOOK**
**AND**
**CONSTRUCTIVE TRUST TO AVOID UNJUST ENRICHMENT**

106.   The plaintiff re-alleges paragraphs 1 through 48 and incorporates them here as though set forth in full.

107.   The defendant SNOOK was assigned the task by CORRECT CRAFT to apply for patents on the plaintiff LARSON'S tower invention. As the one assigned to apply for the patent on the plaintiff's invention, the defendant SNOOK had a fiduciary duty to the inventor LARSON and had a duty to be truthful and honest with the inventor.

108.   The defendant SNOOK was the plaintiff LARSON'S direct supervisor at
CORRECT CRAFT, and knew, or should have known, that LARSON had
conceived the idea, and that SNOOK only learned of the invention when
LARSON presented him with a concept sketch early in August of 1996.

109.   The defendant SNOOK knew, or should have known, that the concept of the
Flight Control Tower clearly originated with Borden Larson.

110.   Yet, in spite of defendant SNOOK'S knowledge that LARSON alone conceived
the tower, SNOOK added his name to the patent applications as though he was a
co-inventor.

111.   By adding his name to the patent applications, defendant SNOOK, intentionally
deprived the plaintiff LARSON of his intellectual personal property, and
wrongfully took what did not belong to him, or wrongfully diminished the
plaintiff sole right to the tower invention.

112.   The deprivation by SNOOK of plaintiff's rights was permanent or was for an
indefinite time.

113.   Thereafter the defendant SNOOK sold his rights as co-inventor for an undisclosed
amount of money, thereby profiting from the sale of the plaintiff's intellectual
personal property.

114.   The defendant SNOOK then induced the plaintiff LARSON to convey his rights

to defendant CORRECT CRAFT, a company where defendant SNOOK was
highly compensated.

115. The Plaintiff LARSON had a present or immediate right to possess the intellectual
personal property.

116. The deprivation of the intellectual personal property was without LARSON'S
consent or authorization.

117. The plaintiff LARSON has been damaged.

WHEREFORE, LARSON demands judgment for damages against WILLIAM SNOOK
for compensatory and special damages, interest and costs and for any other relief this
court deems just and equitable and further demands trial by jury on all issues so triable.

## COUNT VIII
## DECLARATORY JUDGMENT AGAINST CORRECT CRAFT

118. The plaintiff realleges paragraphs 1 through 48 and incorporates them here as
though set forth in full.

119. The defendant CORRECT CRAFT claims rights to two of the plaintiff
LARSON'S inventions which have never been assigned to defendant CORRECT
CRAFT.  Those unassigned patents are:

(a)     Name: Water Sport Towing Apparatus;  Serial Number: 09/624,166;  Filing
Date: 7/24/00;  Patent No. 6,374,762;  Issued: 4/23/02; The plaintiff

30

LARSON was listed as the inventor and has never assigned his rights to this patent.

(b)  Name: Water Sport Towing Apparatus;  Serial Number: 095387;  Filing Date: 3/12/02;  Patent No. 6,666,159;  Issued:12/23/03;  The plaintiff LARSON was listed as the inventor and has never assigned his rights to this patent.

120.  The defendant CORRECT CRAFT claims that assignment have been granted to the following patents, however, the assignments attached as Exhibit 1, are vague and unclear as to what rights are being assigned, or what patent the rights are assigned.  Those unclear patents are:

(a)  Name: Water Sport Towing Apparatus and Method; Serial Number: 09/036,826;  Filing Date 3/9/98;  Patent No. 5,979,350; Issued: 11/9/99

(b)  Name: Water Sport Performance System and Method;  Serial Number: 09/037,172;  Filing Date 3/9/98;  Patent No. 6,044,788;  Issued: 4/4/00

(c)  Name: Water Sport Towing Apparatus;  Serial Number:  09/399,683;  Filing Date: 9/21/99;  Patent No. 6,192,819;  Issued: 2/27/01

(d)  Name: Water Sport Towing Apparatus and Method;  Serial Number: 09/613,154;  Filing Date: 6/30/00;  Patent No. RE37,823;  Issued: 9/3/02

(e)  Name: Water Sport Towing Device;  Serial Number: 29/141,472;  Filing

Date: 5/7/01;  Patent No. D462,932;  Issued: 9/17/02

121.   An actual and justiciable controversy now exists between plaintiff LARSON and

defendant CORRECT CRAFT as to the right of plaintiff LARSON in his

inventions, and in the patents to such inventions, including the right to license or

assign his interest, and the right to manufacture, use, and sell, the subject matter of

the patents to his inventions, in that plaintiff LARSON asserts that the defendant

CORRECT CRAFT'S claim to the aforesaid inventions and patents are invalid

and defendant asserts that their claims are valid, and until such controversy is

settled, plaintiff LARSON cannot properly proceed to license or assign his right,

title, and interest in and to the inventions and patents, or to manufacture, use, and

sell the inventions under the patents.

122.   This action is brought pursuant to the provisions of Florida Statute, Chapter 86.

WHEREFORE, plaintiff requests:

(a)   Adjudication of the respective rights of plaintiff LARSON and defendant

CORRECT CRAFT in the above-described applications, inventions, and

patents;

(b)   A decree determining that defendant CORRECT CRAFT only has a shop-

right, or a nonexclusive, nontransferable license to the applications,

inventions, and patents, and forever barring and enjoining defendant from

32

asserting any more than a shop-right to such applications, inventions, and patents; and adjudging that plaintiff LARSON has title to such inventions and has the right to license or assign such title to other persons and to manufacture, use, and sell the inventions under the patents;

(c)   Plaintiff's costs as expended in this action; and

(d)   Such other and further relief as the court may deem just and proper.

## COUNT VIII
## DECLARATORY JUDGMENT AGAINST ROBERT TODD

123.   The plaintiff realleges paragraphs 1 through 26, 96-104 and incorporates them here as though set forth in full.

124.   Defendant TODD claims that he was a "co-inventor" of plaintiff LARSON'S tower invention, even though inventor LARSON never met with defendant TODD at any time when the tower idea was being conceived.

125.   An actual and justiciable controversy now exists between plaintiff LARSON and defendant TODD as to the right of plaintiff LARSON to claim sole inventorship of the tower invention, and in the patents to such invention, including the right to license or assign his interest, and the right to manufacture, use, and sell the subject matter of the patents, in that plaintiff LARSON asserts that the defendant TODD'S claim to the aforesaid inventions and patents are invalid and defendant

33

TODD asserts that his claims are valid, and until such controversy is settled,

plaintiff LARSON cannot properly proceed to license or assign his right, title, and

interest in and to the inventions and patents, or to manufacture, use, and sell the

inventions under the patents.

126.   This action is brought pursuant to the provisions of Florida Statute, Chapter 86.

WHEREFORE, plaintiff requests:

(a)   Adjudication of the respective rights of plaintiff and defendant in the above-
described applications, inventions, and patents;

(b)   A decree determining that defendant TODD, has no rights to claim co-
inventorship of the tower;

(c)   Plaintiff's costs as expended in this action; and

(d)   Such other and further relief as the court may deem just and proper.


## COUNT X
## DECLARATORY JUDGMENT AGAINST WILLIAM SNOOK

127.   The plaintiff realleges paragraphs 1 through 38 and incorporates them here as
though set forth in full.

128.   An actual and justiciable controversy now exists between plaintiff LARSON and

defendant SNOOK as to the right of plaintiff LARSON to claim sole inventorship

of the tower invention, and in the patents to such invention, including the right to

34

license or assign his interest, and the right to manufacture, use, and sell, the subject matter of the patents to his inventions, in that plaintiff LARSON asserts that the defendant SNOOK'S claim to the aforesaid inventions and patents are invalid and defendant SNOOK asserts that his claims are valid, and until such controversy is settled, plaintiff LARSON cannot properly proceed to license or assign his right, title, and interest in and to the inventions and patents, or to manufacture, use, and sell the inventions under the patents.

129.  This action is brought pursuant to the provisions of Florida Statute, Chapter 86.

WHEREFORE, plaintiff requests:

(a)  Adjudication of the respective rights of plaintiff LARSON and defendant SNOOK in the above-described applications, inventions, and patents;

(b)  A decree determining that defendant SNOOK, has no rights to claim co-inventorship of the tower.

(c)  Plaintiff's costs as expended in this action; and

(d)  Such other and further relief as the court may deem just and proper.

The Plaintiff
Borden Larson

_____

BEECHER A. LARSON
Florida Bar No. 52825
Law Offices of Beecher A. Larson
1201 Ridge Road
Longwood, FL 32750
321-206-3270

# ASSIGNMENT

WHEREAS, Borden M. Larson of 14141 Winterset Drive, Orlando, Florida 32832, and William N. Snook of 806 Lake Highland Drive, Orlando, Florida 32803, hereinafter collectively referred to as Assignors, have made certain improvements or inventions in WATER SPORTS PERFORMANCE SYSTEM AND METHOD, for which Assignors have executed an application for United States Letters Patent filed of even date herewith, in the United States Patent and Trademark Office; and

WHEREAS, Correct Craft, Inc., a Florida corporation, hereinafter referred to as Assignee, is desirous of acquiring the same;

NOW THEREFORE, for and in consideration of One Dollar ($1.00), and other good and valuable consideration, receipt whereof is hereby acknowledged, said Assignors do hereby sell, assign and transfer to said Assignee, its successors and assigns, all right, title and interest in and to said United States Patent application, the invention or inventions therein shown and described and any improvements on said inventions heretofore or hereafter made, any divisions or continuations of said application, and all patents, United States and foreign, to be granted upon any such application or for the invention or inventions thereof, and any reissues, continuations or extensions of said patents; and said Assignors do hereby authorize and request the Commissioner of Patents to issue all patents on said United States Patent applications or for the invention or inventions hereof, in accordance with this assignment.

And said Assignors for said consideration hereby covenant and agree that said Assignors are the owners of the full title herein conveyed and have the right to convey the same, and agree that said Assignors will communicate to said Assignee any facts known to said Assignors respecting said invention or inventions, and testify in any legal proceedings when called upon by said Assignee, sign all lawful papers deemed by said Assignee as expedient to vest in it the legal title herein sought to be conveyed or for the filing and prosecution of all applications and patents, United States and foreign, and otherwise aid said Assignee, its successors and assigns, in obtaining full patent protection on said invention and enforcing proper protection under said patents, but in every instance at the Assignee's expense.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this ___ day of March, 1998.

_____
Borden M. Larson

_____
William N. Snook

STATE OF FLORIDA
COUNTY OF ORANGE

On this ___ day of March, 1998, before me personally appeared Borden M. Larson, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires:

SEAL

CARL M. NAPOLITANO
My Comm Exp. 8/11/200
Bonded By Service Ins
No. CC666851
Personally Known [ ] Other I.D.

STATE OF FLORIDA
COUNTY OF ORANGE

On this ___ day of March, 1998, before me personally appeared William N. Snook, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires:

SEAL

CARL M. NAPOLITANO
My Comm Exp. 8/11/200
Bonded By Service Ins
No. CC666851
Personally Known [ ] Other I.D.

2

# ASSIGNMENT

WHEREAS, Borden M. Larson of 14141 Winterset Drive, Orlando, Florida 32832 and William N. Snook of 806 Lake Highland Drive, Orlando, Florida 32803, hereinafter collectively referred to as Assignors, have made certain improvements or inventions in WATER SPORT TOWING APPARATUS, for which Assignors have executed an application for United States Letters Patent filed of even date herewith, in the United States Patent and Trademark Office; and

WHEREAS, Correct Craft, Inc., a Florida corporation, hereinafter referred to as Assignee, is desirous of acquiring the same;

NOW THEREFORE, for and in consideration of One Dollar ($1.00), and other good and valuable consideration, receipt whereof is hereby acknowledged, said Assignors do hereby sell, assign and transfer to said Assignee, its successors and assigns, all right, title and interest in and to said United States Patent application, the invention or inventions therein shown and described and any improvements on said inventions heretofore or hereafter made, any divisions or continuations of said application, and all patents, United States and foreign, to be granted upon any such application or for the invention or inventions thereof, and any reissues, continuations or extensions of said patents; and said Assignors do hereby authorize and request the Commissioner of Patents to issue all patents on said United States Patent applications or for the invention or inventions hereof, in accordance with this assignment.

And said Assignors for said consideration hereby covenant and agree that said Assignors are the owners of the full title herein conveyed and have the right to convey the same, and agree that said Assignors will communicate to said Assignee any facts known to said Assignors respecting said invention or inventions, and testify in any legal proceedings when called upon by said Assignee, sign all lawful papers deemed by said Assignee as expedient to vest in it the legal title herein sought to be conveyed or for the filing and prosecution of all applications and patents, United States and foreign, and otherwise aid said Assignee, its successors and assigns, in obtaining full patent protection on said invention and enforcing proper protection under said patents, but in every instance at the Assignee's expense.

IN WITNESS WHEREOF, We have hereunto set our hands and seals this _17th_ day of September, 1999.

_____
Borden M. Larson

_____
William N. Snook

STATE OF FLORIDA
COUNTY OF ORANGE

On this _17th_ day of September, 1999, before me personally appeared Borden M. Larson, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires: 8/11/2001

SEAL

CARL M. NAPOLITANO
My Comm Exp. 8/11/2001
Bonded By Service Ins
No. CO666851
Personally Known [ ] Other I.D.

STATE OF FLORIDA
COUNTY OF ORANGE

On this _17th_ day of September, 1999, before me personally appeared William N. Snook, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires: 8/11/2001

SEAL

CARL M. NAPOLITANO
My Comm Exp. 8/11/2001
Bonded By Service Ins
No. CO666851
Person Other I.D.

2

## ASSIGNMENT OF U.S. DESIGN PATENT NO. 409,972

WHEREAS, **BORDEN M. LARSON** of 14141 Winterset Drive, Orlando, Florida 32832; and **WILLIAM N. SNOOK** of 806 Lake Highland Drive, Orlando, Florida 32803; hereinafter referred to as **ASSIGNORS**, have made certain improvements or inventions in U.S. Design Patent 409,972; and

WHEREAS, **CORRECT CRAFT, INC.**, of 6100 S. Orange Avenue, Orlando, Florida 32809, hereinafter referred to as **ASSIGNEE**, is desirous of acquiring the same;

NOW THEREFORE, This Indenture Witnesseth:   That for and in consideration of ONE DOLLAR, lawful money of the United States, and other good and valuable consideration, receipt whereof is hereby acknowledged, **ASSIGNORS** do hereby sell, assign and transfer to **ASSIGNEE**, its successors and assigns, all rights, title and interest in and to United States Design Patent 409,972, the invention or inventions therein shown and described and any improvements on the inventions heretofore or hereafter made, any divisions or continuations of said application, and all patents, United States and foreign, to be granted upon any such application or for the invention or inventions thereof, and any reissues, continuations or extensions of said patents.

In Witness Whereof, we have hereunto set my hand and seal this 25th day of April, 2000.

_____
BORDEN M. LARSON

_____
WILLIAM N. SNOOK

State of Florida     :
                     : ss.
County of Orange     :

Subscribed and sworn to before me
this 25th day of April, 2000.

_____
Notary Public
My commission expires:

__✓__ Personally known to me.

_____ Produced the following identification:

_____

## ASSIGNMENT

WHEREAS, **Borden Larson**, of 14141 Winterset Drive, Orlando, FL 32832, **William N. Snook**, of 806 Lake Highland Drive, Orlando, FL 32803, and **Robert Todd**, of 1635 Minnesota Avenue, Winter Park, FL 32789, hereinafter collectively referred to as Assignors, have made certain improvements or inventions in WATER SPORT TOWING APPARATUS AND METHOD, for which Assignors have executed a Reissue application for Application Serial No. 09/036,826, Filed on March 9, 1998, and issuing as United States Letters Patent No. 5,979,350 on November 9, 1999, and;

WHEREAS, **Correct Craft, Inc.** a Florida corporation, hereinafter referred to as Assignee, is desirous of acquiring the same;

NOW THEREFORE, This Indenture Witnesseth: That for and in consideration of One Dollar ($1.00) lawful money of the United States, and other good and valuable consideration, receipt whereof is hereby acknowledged, the Assignors do hereby sell, assign and transfer to the Assignee, its successors and assigns, all right, title and interest in and to the United States Patent application, the invention or inventions therein shown and described and any improvements on the inventions heretofore or hereafter made, any divisions or continuations of the application, and all patents, United States and foreign, to be granted upon any such application or for the invention or inventions thereof, and any reissues, continuations or extensions of the patents; and the Assignors do hereby authorize and request the Commissioner of Patents to issue all patents on the United States Patent applications or for the invention or inventions hereof, in accordance with this assignment.

And the Assignors for the consideration hereby covenant and agree that the Assignors are the owners of the full title herein conveyed and have the right to convey the same, and agree that the Assignors will communicate to the Assignee any facts known to the Assignors respecting the invention or inventions, and testify in any legal proceedings when called upon by the Assignee, sign all lawful papers deemed by the Assignee as expedient to vest in it legal title herein sought to be conveyed or for the filing and prosecution of all applications and patents, United States and foreign, and otherwise aid the Assignee, its successors and assigns, in obtaining full patent protection on the invention and enforcing proper protection under the patents, but in every instance at the Assignees' expense.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on the day and year set forth below.

Date: 6 - 23 - ØØ

_____
BORDEN LARSON

STATE OF FLORIDA
COUNTY OF ORANGE

On this 23rd day of June, 2000, before me personally appeared the above-named **Borden Larson**, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires:

ANGELA R. PILKINGTON
My Comm Exp. 5/16/2001
Bonded By Service Ins.
No. CC647788
[ ] Personally Known [ ] Other I.D.

Date: 6/23/00

_____
WILLIAM N. SNOOK

STATE OF FLORIDA
COUNTY OF ORANGE

On this 23rd day of June, 2000, before me personally appeared the above-named **William N. Snook**, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth

_____
NOTARY PUBLIC
My Commission Expires:

ANGELA R. PILKINGTON
My Comm Exp 5/16/2001
Bonded By Service Ins
No. CC547788
[ ] Personally Known  [ ] Other I.D

Date: 6-26-00

_____
ROBERT TODD

STATE OF FLORIDA
COUNTY OF ORANGE

On this 26th day of June, 2000, before me personally appeared the above-named **Robert Todd**, to me personally known as the individual who executed the foregoing assignment, and who acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires:

DAN L M. NAPOLITANO
My Comm Exp. 8/11/2001
Bonded By Service Ins
No. CC666851
[ ] Personally Known  [ ] Other I.D.

2

## ASSIGNMENT

WHEREAS, **Borden Larson**, of 14141 Winterset Drive, Orlando, FL 32832, hereinafter referred to as Assignor, has made certain improvements or inventions in WATER SPORT TOWING ASSEMBLY, for which Assignor has executed an application for United States Letters Patent filed of even date herewith in the United States Patent and Trademark Office; and

WHEREAS, **CORRECT CRAFT, INC.,** a Florida corporation, hereinafter referred to as Assignee, is desirous of acquiring the same;

NOW THEREFORE, for and in consideration of One Dollar ($1.00) lawful money of the United States, and other good and valuable consideration, receipt whereof is hereby acknowledged, the Assignor does hereby sell, assign and transfer to the Assignee, its successors and assigns, all right, title and interest in and to the United States Patent application, the invention or inventions therein shown and described and any improvements on the inventions heretofore or hereafter made, any divisions or continuations of the application, and all patents, United States and foreign, to be granted upon any such application or for the invention or inventions thereof, and any reissues, continuations or extensions of the patents; and the Assignor does hereby authorize and request the Commissioner of Patents to issue all patents on the United States Patent applications or for the invention or inventions hereof, in accordance with this assignment.

And the Assignor for the consideration hereby covenants and agrees that the Assignor is the owner of the full title herein conveyed and has the right to convey the same, and agrees that the Assignor will communicate to the Assignee any facts known to the Assignor respecting the invention or inventions, and testify in any legal proceedings when called upon by the Assignee, sign all lawful papers deemed by the Assignee as expedient to vest in it the legal title herein sought to be conveyed or for the filing and prosecution of all applications and patents, United States and foreign, and otherwise aid the Assignee, its successors and assigns, in obtaining full patent protection on the invention and enforcing proper protection under the patents, but in every instance at the Assignee's expense.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _23_ day of _MARCH_ , 2001.

_____
**BORDEN LARSON**


STATE OF FLORIDA
COUNTY OF ORANGE

On this _23rd_ day of _April_ , 2001, before me personally appeared **Borden Larson,** who is personally known by me or proved to me on the basis of satisfactory evidence to be the same individual who executed the foregoing assignment, and who acknowledged to me that he/she executed the same of his/her own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires: _March 29, 2003_

GERALDINE E. FOWLER
Notary Public - State of Florida
My Commission Expires Mar 29, 2003
Commission # CC821685

## ASSIGNMENT

WHEREAS, **Borden Larson**, of 14141 Winterset Drive, Orlando, FL 32832, hereinafter referred to as Assignor, has made certain improvements or inventions in WATER SPORT TOWING ASSEMBLY, for which Assignor has executed an application for United States Letters Patent filed of even date herewith in the United States Patent and Trademark Office; and

WHEREAS, **CORRECT CRAFT, INC.**, a Florida corporation, hereinafter referred to as Assignee, is desirous of acquiring the same;

NOW THEREFORE, for and in consideration of One Dollar ($1.00) lawful money of the United States, and other good and valuable consideration, receipt whereof is hereby acknowledged, the Assignor does hereby sell, assign and transfer to the Assignee, its successors and assigns, all right, title and interest in and to the United States Patent application, the invention or inventions therein shown and described and any improvements on the inventions heretofore or hereafter made, any divisions or continuations of the application, and all patents, United States and foreign, to be granted upon any such application or for the invention or inventions thereof, and any reissues, continuations or extensions of the patents; and the Assignor does hereby authorize and request the Commissioner of Patents to issue all patents on the United States Patent applications or for the invention or inventions hereof, in accordance with this assignment.

And the Assignor for the consideration hereby covenants and agrees that the Assignor is the owner of the full title herein conveyed and has the right to convey the same, and agrees that the Assignor will communicate to the Assignee any facts known to the Assignor respecting the invention or inventions, and testify in any legal proceedings when called upon by the Assignee, sign all lawful papers deemed by the Assignee as expedient to vest in it the legal title herein sought to be conveyed or for the filing and prosecution of all applications and patents, United States and foreign, and otherwise aid the Assignee, its successors and assigns, in obtaining full patent protection on the invention and enforcing proper protection under the patents, but in every instance at the Assignee's expense.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this ___ day of __MAY__, 2001.

_____
**BORDEN LARSON**

STATE OF FLORIDA
COUNTY OF ORANGE

On this _1st_ day of __May__, 2001, before me personally appeared **Borden Larson**, who is personally known by me or proved to me on the basis of satisfactory evidence to be the same individual who executed the foregoing assignment, and who acknowledged to me that he/she executed the same of his/her own free will for the purposes therein set forth.

_____
NOTARY PUBLIC
My Commission Expires:

ANGELA R. PILKINGTON
My Comm Exp. 5/16/2001
Bonded By Service Ins
No. CC647788
[X] Personally Known [ ] Other I.D