**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BORDEN M. LARSON,**

        **Plaintiff,**

-vs-                                                           Case No.  6:05-cv-686-Orl-31JGG

**CORRECT CRAFT, INC., WILLIAM**
**SNOOK & ROBERT TODD,**

        **Defendants.**

_____

## ORDER

This matter come before the Court on the Motion to Compel Disclosure of Alleged Privileged Material (Doc. 139) filed by the Plaintiff, Borden M. Larson ("Larson"), and the response (Doc. 155) filed by Defendant Correct Craft, Inc. ("Correct Craft").  At a hearing regarding this matter on December 8, 2006, both parties were requested to provide additional briefing, which the Court has also reviewed.  (Doc. 163, Doc. 169).  The Court held a second evidentiary hearing on April 12, 2007.

**I.**     **Background**

Larson worked for Correct Craft at the time he conceived the Wakeboard Tower invention that is the subject of the instant suit.  While Larson was employed by the company, it retained attorney Herbert Allen ("Allen") and the law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. (the "Allen-Dyer firm") to represent it in connection with the patenting of the Wakeboard Tower.  Allen spoke with Larson about the patent on several occasions and presented him with

documents to sign, including several assigning his rights to Correct Craft. (Doc. 53 at 2-3; Doc. 121-4 at 36).

Initially, the Allen-Dyer firm also represented the Defendants in the instant suit. On September 8, 2005, this Court found that Allen and his firm were disqualified from further representation of the Defendants in this case because (1) a prior attorney-client relationship existed between Allen and Larson and (2) the matters involved in this case were substantially similar to those involved in the prior relationship. (Doc. 53 at 12). In essence, the Court found that while representing Correct Craft regarding the patenting of the Wakeboard Tower, Allen had given Larson a reasonable basis to believe that he was also providing legal advice to him. (Doc. 53 at 11).

Larson now seeks certain documents that Correct Craft has withheld from discovery on the grounds of attorney-client privilege. He argues, *inter alia*, that because the Allen-Dyer firm represented both himself and Correct Craft in connection with the patenting of the Wakeboard Tower, the privilege does not apply.[1]

## II.    Legal Standards

Florida Statute § 90.502 governs attorney-client privilege. In pertinent part, it provides that a "client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat.

---

[1]Larson made several additional arguments, both in his papers and at the evidentiary hearing, that the privilege did not apply to the communications at issue or had been waived by Correct Craft. After considering these additional arguments, the Court concludes that they do not warrant extended discussion.

§ 90.502(c). However, the statute also provides that there is no privilege as to a communication between lawyer and client when it is "relevant to a matter of common interest between two or more clients ... if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients." Fla. Stat. § 90.502(4)(e). The party asserting the existence of the common interest exception bears the burden of proving it. *Cone v. Culverhouse*, 687 So.2d 888, 892 (Fla. 2d DCA 1997).

### III.    Analysis

**Need to Review the Communications at Issue**

Relying on the *Culverhouse* case, Correct Craft argues that this Court must examine the communications involving the "distinct matter" to determine whether the company and Larson had such common interests that it lacked an objective reasonable basis to preserve the confidentiality of the communications from Larson. (Doc. 163 at 4). But Correct Craft misreads the case. *Culverhouse* involved a law firm that had represented both Tampa Bay Buccaneers owner Hugh Culverhouse and his wife, Joy Culverhouse, in various matters. *Id.* at 889. Joy Culverhouse sought production of communications between the firm on one hand and Hugh Culverhouse, corporations he controlled, the personal representatives of his estate, or trustees of his foundations on the other. *Id.* The trial court determined that the firm represented the Culverhouses, the personal representatives, and the trustees "in common," and required broad disclosure of such communications. *Id.* On appeal, the Second District Court of Appeal partially reversed the trial court, stating:

> Thus, we grant the petitions to the extent that we direct the trial court on remand to order the professionals to produce only those documents which they currently agree contain communications in matters in which Mrs. Culverhouse was represented in

>  common with another client. If Mrs. Culverhouse desires to review additional documents that the professionals maintain relate to separate matters involving other clients, the trial court shall conduct an additional evidentiary hearing, and if necessary arrange for those documents to be reviewed *in camera* to determine whether they actually relate to a matter of joint representation.

*Id.* at 889. Thus, contrary to Correct Craft's suggestion, a court is not required to hold an evidentiary hearing in every instance to determine whether the common interest exception might apply. And in regard to the instant motion, as in *Culverhouse*, the documents at issue are limited to communications dealing with the matter of common interest (*i.e.*, the Wakeboard Tower patent(s)) between Larson and Correct Craft.[2]

   **Common Interest Exception**

   Correct Craft argues that, even if the common interest exception applies in this case, it would only apply to communications Correct Craft made in Larson's presence or which Correct Craft reasonably believed would be disclosed to the Plaintiff. (Doc. 163 at 8). In support of this argument, Correct Craft principally relies on the case of *Dominguez v. Citizens' Bank & Trust Co.*, 56 So. 682 (Fla. 1911). In *Dominguez*, the plaintiff believed a bank had cheated him out of some money he had deposited. *Id.* at 682. He consulted his attorney, a Mr. Gunby, about the matter, only to find out that Gunby also represented the bank. *Id.* at 682-83. At trial, the bank wanted Gunby to testify (over the plaintiff's objection) regarding the conversation. *Id.* The trial court refused to permit the testimony, and the Florida Supreme Court affirmed, stating

---

[2]At the December 8 hearing on this matter, the Court limited the scope of the communications that might fall within the exception to "documents that deal with the common interests, which is the patenting of the tower," adding that communications regarding other matters, such as the firing of another employee, would not be pertinent. (Docket 161 at 42).

> It is doubtless the law that, where an attorney represents both or all the parties in a transaction, conversations and transactions between such parties in the presence of the attorney and each other are not privileged conversations, but such attorney may be required to testify to such conversations and communications; but we think the better rule is that where the facts are such as they here appear to be, *viz.*, that plaintiff went alone to see Mr. Gunby, as he says he did, because he was his retained attorney, and made statements to him in the absence of the other party, and which were apparently confidential, the trial judge committed no error in refusing to allow Mr. Gunby to testify.

*Id.* at 683. The basis for the ruling was not, as Correct Craft would have it, an "exception to the common interest exception" for statements made to a joint attorney in the absence of the other client. (Doc. 163 at 9). The plaintiff in *Dominguez* consulted Gunby about *suing* the bank. Gunby was obviously not "a lawyer retained or consulted in common" by the parties, so the exception could not have applied.

Nonetheless, in this case, the Court finds that the common interest exception does not apply. Based on his deposition testimony, Larson clearly believed that he and Correct Craft were on the same team, working toward the same goal, with an attorney that had been retained by his employer to represent both of them. (Doc. 35-3 at 10). However, the common interest exception must be examined from the perspective of an objectively reasonable client, not from a particular client's subjective expectation or from the attorney's perspective. *Culverhouse*, 687 So. 2d at 892. Despite being given ample opportunity (including a second evidentiary hearing), Larson did not produce evidence that Correct Craft knew or should have known that the Allen-Dyer firm was also representing Larson individually during the prosecution of the Wakeboard Tower patent.[3] As in

---

[3]The notice for the second evidentiary hearing informed the parties that the Court intended to focus on "the Defendants' knowledge or beliefs regarding the existence of an attorney-client relationship between the Plaintiff and the Allen-Dyer firm". (Doc. 180 at 1). The Court also sought to focus on "disclosures, if any, by members of the Allen-Dyer firm of confidential communications

*Dominguez*, even if the parties consulted the Allen-Dyer firm regarding a matter of common interest, the Court finds that the Allen-Dyer firm was not "retained or resulted in common," as required for the exception to apply.

In consideration of the foregoing, it is hereby **ORDERED** and **ADJUDGED** that the Motion to Compel Disclosure of Alleged Privileged Material (Doc. 139) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 26, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

with the Plaintiff." (Doc. 180 at 1). The Plaintiff failed to demonstrate that any such disclosures occurred.