**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BORDEN M. LARSON,**

**Plaintiff,**

**-vs-** **Case No. 6:05-cv-686-Orl-31UAM**

**CORRECT CRAFT, INC., WILLIAM SNOOK & ROBERT TODD,**

**Defendants.**

---

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 228) filed by Defendant Correct Craft, Inc. ("CCI") and the response (Doc. 249) filed by the Plaintiff, Borden Larson ("Larson").

## I. Background

CCI is a manufacturer of ski boats. (Doc. 3 at 2). Larson worked for CCI from 1986 until 2001. (Doc. 3 at 3). He was originally hired as a draftsman. (Doc. 228 at 2). He later was given additional responsibilities. There is some dispute as to the scope of those responsibilities. However Larson testified that he was employed as a designer beginning in approximately 1989 (Doc. 229-6 at 6)) and that he became a supervisor of research and development in 1994 or 1995 (Doc. 229-6 at 6-7). As a supervisor of research and development, he managed a small crew of people who were responsible for building new products, and he would "conceive, create new designs for the company [and] modify existing designs for model change." (Doc. 229-6 at 7). He testified that his work included designing "new products that were competitive in the marketplace,

whether it's the hull, the deck, the interior parts. Anything that, you know, needed to be done, quite honestly." (Doc. 229-6 at 7-8).

In 1996, Larson was trying to improve the design of CCI's "Sport Nautique" model. (Doc. 229-6 at 13). In particular, he sought to expand the amount of interior space available. (Doc. 229-6 at 11). He came up with the idea of an overhead structure "where we could attach things to, get the wakeboard and skis out of the way [and] free up a lot of storage space." (Doc. 229-6 at 11). In his words, "one thing led to another, and I said, 'As long as we're putting wakeboards up here, why don't we tie a rope up here?'" (Doc. 229-6 at 11). Larson eventually sketched a tower embodying these ideas. He did so while seated at a CCI drawing table, on company time, using CCI materials. (Doc. 229-9 at 29). He received his ordinary salary and benefits for the work (Doc. 229-9 at 29) and never sought any additional compensation for having come up with the "wakeboard tower" concept. (Doc. 229-9 at 34).

After he showed the sketch to CCI management, the company had a prototype built and opted to seek a patent for the wakeboard tower. As part of the patent application process (which resulted in several patents related to the wakeboard tower concept), CCI got Larson to sign a number of assignments of any and all rights he might hold in the wakeboard tower device to CCI. The first such assignment was executed March 9, 1998 (Doc. 3 at 38), and Larson signed additional assignments in 1999, 2000, and 2001 (Doc. 3 at 39-45). CCI was awarded its first patent for the wakeboard tower on November 9, 1999.

Utilizing a number of legal theories, Larson is now attempting to undo the effect of those assignments. Those theories include fraud (Count I), constructive fraud for failure to disclose

(Count II), rescission (Count III), breach of contract (Count IV), unjust enrichment (Count V), and declaratory judgment (Count VIII).

## II. Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[1]

[1] All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

## III. Analysis

### A. Count I – Fraud

The elements of a claim for fraud under Florida law are "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984). For a misrepresentation or omission to be actionable, it must be one of fact rather than opinion or mere legal view. *Baker v. United Services Auto. Ass'n*, 661 So. 2d 128, 131 (Fla. 1st DCA 1995); *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994).

It is not clear what allegedly false statement or statements Larson is relying upon as the basis for his fraud claim. He contends that he was falsely told that the patent assignments were necessary for the patent application and that CCI itself was filing the patent application. (Doc. 249 at 1). Larson does not explain how either of these apparently accurate statements are either material or false. At other points, he contends that CCI failed to explain patent law to him. (Doc. 249 at 12). However, Larson produces no evidence that CCI had an obligation to explain patent law or patent rights to him.[2]

Larson appears to contend that the misrepresentation was CCI's (implicit or explicit) claim of entitlement to the patent rights for the wakeboard tower. Larson claims that CCI had no such rights, for several reasons. He contends that he was not asked to conceive an idea for a tower to

[2]Larson's contention that he was involved in a confidential or fiduciary relationship with CCI, allegedly giving rise to an obligation to disclose certain information on CCI's part, is discussed *infra*.

pull skiers or wakeboarders. (Doc. 249 at 3). The record supports this contention. However, the assignment need not be so specific for the employer to be entitled to an employee's inventive output:

> Consistent with the presumption that the inventor owns his invention, an individual owns the patent rights even though the invention was conceived and/or reduced to practice during the course of employment. At the same time, however, the law recognizes that employers may have an interest in the creative products of their employees. ... [E]mployers may [] claim an employee's inventive work *where the employer specifically hires or directs the employee to exercise inventive faculties*. When the purpose for employment thus focuses on invention, the employee has received full compensation for his or her inventive work. To employ this contract principle, a court must examine the employment relationship at the time of the inventive work to determine if the parties entered into an implied-in-fact contract to assign patent rights.

*Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996) (emphasis added).

Larson admits that he was asked to make design changes that would improve CCI's product lines. (Doc. 249 at 8). Clearly, CCI expected him to exercise "inventive faculties" in accomplishing this task, even if he was called a "designer."[3] Larson's argument on this point fails.

Thus the question becomes one of whether CCI and Larson entered into an implied-in-fact contract to assign patent rights. *Teets* at 407. Under Florida law, an employer may not claim ownership of an employee's invention unless the contract of employment by express terms or unequivocal inference show that the employee was hired for the express purpose of producing the thing patented. *State v. Neal*, 12 So. 2d 590, 591 (Fla. 1943). And all the record evidence regarding the relationship here suggests that Larson was employed for that purpose and that the parties entered into an implied-in-fact contract to assign patent rights. It is undisputed that Larson

[3] Larson argues that he was hired as a designer, not an inventor (Doc. 249 at 8), a distinction that makes no difference in this context.

was tasked to design items that would improve CCI's boats; that while doing so on company time he came up with and sketched the idea for a tower; that he presented his sketch to CCI, which paid for a prototype and for the patenting process; and that he never objected to their doing so, or to assigning his rights to CCI; and that he never requested anything beyond his normal compensation as a result of conceiving the tower.

Even though CCI never told specifically told Larson to design a wakeboard tower (or to solve the particular problems that the wakeboard tower remedied), both logic and Larson's own conduct show that it fell within the category of things he was assigned to accomplish – i.e., to improve CCI's boats. To the extent that it is even arguable that it fell outside this category, and that CCI was therefore not entitled to it, this is at most a difference of opinion, a matter of differing legal interpretations, which cannot support a fraud claim as a matter of law. *Baker* at 131; *Thor Bear, Inc.* at 172. There is no record evidence that CCI misrepresented a single material fact, such as whether the wakeboard tower concept was commercially viable. *Compare Roberts v. Sears, Roebuck and Company*, 573 F.2d 976 (7th Cir. 1978) (defendant employer's deceit regarding cost to produce patented item and its expected sales entitled plaintiff inventor to monetary damages and possible rescission of assignment). And Larson possessed all the pertinent information (such as his job responsibilities, and the time and place he came up with his idea) needed to determine whether CCI had any legal rights to his idea.[4]

---

[4]Larson argues that CCI prevented him from obtaining legal advice regarding his patent rights. (Doc. 249 at 20). This argument is ludicrous. The only evidence of a so-called "confidentiality order" that Larson points to was the testimony of Walter Meloon, CCI's former president, that the company made a "general request that – you know, for the – for their security and the company's security, it's best not to go out of here and talk about things that happened here." (Doc. 258-3 at 337). There is no evidence that this "request" was intended to prevent anyone from obtaining confidential legal

Moreover, even if one assumes that CCI had no legal right to the wakeboard tower patent, Larson has failed to produce a shred of evidence that CCI knew this at the time they were impliedly telling him otherwise. Because Larson has failed to establish the existence of a disputed issue of material fact as to at least two of the four elements needed to sustain his fraud claim, CCI is entitled to summary judgment as to Count I.

**B. Count II – Constructive fraud**

Under Florida law, constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken. *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1179 (M.D.Fla 2005). In Count II of his amended complaint, Larson contends that he was in a confidential and/or fiduciary relationship with defendant CCI and that CCI abused the relationship "by failing to disclose material facts about the patents, about ownership of inventions, and by providing false and misleading statements to the plaintiff."

As noted above, Larson has failed to produce evidence from which a reasonable jury could conclude that CCI made false statements of material fact or failed to disclose anything it had an obligation to disclose. Moreover, aside from his own testimony that he trusted the people with whom he worked, there is nothing to suggest that a confidential or fiduciary relationship existed here. For such a relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise,

---

advice, or that Larson interpreted it as such. When asked whether Larson taking the tower idea to his own patent attorney would "have been somewhat violating certain confidentiality that he had with [CCI]," Meloon responded, "There was nothing in writing. We just trusted them not to it [sic] when we asked them to." (Doc. 258-3 at 338-39).

counsel, and protect the weaker party. *Muniz v. GCA Services Group,* Inc., 2006 WL 2130735 (M.D.Fla. 2006) (citing *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D.Fla. 1991)). The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party. *Id.* There is no record evidence of any such recognition, acceptance or undertaking here. Larson attempts to argue that he was in such a comparatively weak position with regard to CCI that such a relationship must have existed. No reasonable jury could find that a college graduate with more than ten years of experience in the business was so dependent upon his employer that the employer had a fiduciary duty toward him. CCI is entitled to summary judgment on Larson's constructive fraud claim.

**C. Remaining claims**

The remaining claims require little discussion. In the absence of a viable claim of fraud or constructive fraud, Larson has no basis upon which to seek rescission (Count III). In Count IV, Larson contends that CCI breached the assignment agreements by failing to pay him the required consideration. (Doc. 3 at 25). When an employee is employed for the purpose of inventing, the employee has received full compensation for his inventive work. *Teets* at 407. Moreover, continued employment is adequate consideration for an agreement entered into after employment has begun. *See*, *e.g.*, *Coastal Unilube, Inc. v. Smith*, 598 So. 2d 200, 201 (Fla. 4th DCA 1992). Larson admits that he conceived of and worked on the tower design while receiving his normal salary. Larson's unjust enrichment claim (Count V) rests upon the same foundation as his fraud claims, and therefore their failure is also fatal to it. *See HI Limited Partnership v. Winghouse of Florida, Inc.*, 451 F.3d 1300, 1301 (11th Cir. 2006) (holding that where plaintiff's trade dress

infringement and dilution claims fail, unjust enrichment claim based on trade dress infringement and dilution must also fail). And the failure of Larson's claim to ownership of the patents is also fatal to his claim for a declaratory judgment (Count VIII), as there is no controversy remaining as to his rights. CCI is also entitled to summary judgment on these claims.[5]

**IV. Conclusion**

In consideration of the foregoing, it is hereby **ORDERED** and **ADJUDGED** that the Motion for Summary Judgment (Doc. 228) filed by Defendant Correct Craft, Inc. is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 1, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

[5]A cursory review of the record also suggests that Larson's claims are all barred by the applicable statutes of limitations, but the resolution of those claims on other grounds makes it unnecessary to reach that issue.